RICHARD ANDERSON, Plaintiff-Appellee, v. BURTON ASSOCIATES, LTD., Defendant-Appellant (Lawrence B. Irwin, Defendant).

First District (6th Division) No. 1—90—2916

Opinion filed August 2, 1991.

262

Bischoff, Maurides & Swabowski, Ltd., of Chicago (Mark P. Bischoff, Thomas J. Swabowski, and Paul G. O'Toole, of counsel), for appellant.

Levenfeld, Eisenberg, Janger, Glassberg, Samotny & Halper, of Chicago (James T. Rohlfing, of counsel), for appellee.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Defendant-appellant Burton Associates, Inc. (Burton), appeals from an order granting partial summary judgment to plaintiff-appellee Richard Anderson (Anderson) on count I of Anderson's complaint. The judgment awarded Anderson full value for his stock in Burton, which was Anderson's former employer, pursuant to a shareholders' stock redemption agreement.

Burton is an Illinois professional corporation in the business of certified public accounting. Defendant Lawrence B. Irwin (Irwin), an accountant, was the owner of 120 of the 126 issued shares. Anderson, also an accountant, was the owner of the remaining six shares. On July 1, 1986, Anderson, Irwin and Burton entered into a shareholder's agreement (Agreement). Anderson was also made a director and officer of Burton upon his purchase of the six shares. Anderson left the employ of Burton on either July 14, 1989, or in September of 1989, and shortly after this, joined another accounting firm.

In October of 1989, Anderson filed a two-count complaint against Burton and Irwin. Count I of the complaint alleged that pursuant to paragraph 8 of the Agreement, the parties agreed that shares held by any shareholder would be redeemed upon the shareholder's voluntary termination from employment. The complaint alleged that Anderson terminated his employment with Burton pursuant to the terms of the Agreement, but that Burton and Irwin refused to redeem Anderson's stock, which was valued at $49,235.29. Count II of the complaint was

an action for recovery of wages, bonus, and profit sharing and is not at issue in this appeal.

Burton answered the complaint, admitting the existence of the Agreement between the parties, and admitted that it had not redeemed Anderson's shares of stock, although Burton denied that this was in violation of the Agreement. Burton also pleaded two affirmative defenses, namely: (1) that Anderson breached his fiduciary duty to Burton by soliciting clients away from Burton; and (2) that Anderson breached his obligations under the Agreement of good faith and fair dealing (by soliciting clients).

In March of 1990, plaintiff brought a motion for partial summary judgment. Attached to the motion was the Agreement, the complaint and answer to the complaint, and certain correspondence between the parties. Although defendant responded to the motion, no evidentiary material was produced. In reply, plaintiff relied upon additional evidentiary material, to wit, a request to admit facts which was served upon Burton in January of 1990, and which Burton had not replied to. The request to admit, standing admitted, would establish, *inter alia*, that other than the alleged solicitation of clients, Burton had no other basis to refuse to redeem, that defendant refused to redeem, that none of Burton's customers were contractually obligated to continue doing business with Burton, and that Anderson had performed his contractual obligations of the Agreement.

Burton was subsequently given permission to file an affidavit and a further memorandum. Defendant filed the affidavit of Irwin. In the affidavit, Irwin averred: that as a principal of Burton, Anderson had direct contact with clients, that Anderson would not have been given client contact, and would not have been able to develop relationships with clients, were it not for Anderson's status as a shareholder and principal and that as a result of Anderson's status, he was given access to a number of clients (a list of names was included). Paragraph 8 of Irwin's affidavit stated "Richard Anderson used his contacts and relationship with the above clients to solicit them to use the accounting services of himself [and Anderson's subsequent employer] and to cease using the services of Burton."

Irwin further averred, upon information and belief, that prior to Anderson's leaving Burton, Anderson solicited a number of Burton clients (listing the names of six Burton clients). Additionally, after Anderson left Burton numerous other Burton clients left Burton for Anderson and Anderson's subsequent employer. Irwin averred, again upon information and belief, that "these clients left as a result of solicitation by Richard Anderson."

Irwin's affidavit also related that a meeting between Irwin and Anderson took place on July 12, 1989, at which time the payment to Anderson for Anderson's Burton stock was discussed. Irwin stated "[w]e discussed and agreed that Richard Anderson would receive a promissory note calling for payment over 60 months with interest at the rate provided in the shareholder agreement rather than a lump sum payment. To be deducted from that would be 1½ times the annual billings of any client that Richard Anderson took from Burton to his accounting firm. *** Richard Anderson also said that such a deduction would be unnecessary as he would not take any Burton clients." Attached to the affidavit was a handwritten letter, which, according to Irwin, was the complete agreement of the parties. The letter referred to the promissory note, but was silent as to any 1½ times annual billings of Burton clients. The letter stated that clients Anderson retained was an item "open for discussion." In the affidavit, Irwin explained that this reference was to "the identity of any clients taken by Richard Anderson."

An important aspect of this case is that an amended counterclaim has been filed, which alleges that Anderson breached his fiduciary duty to Burton by solicitation of clients both before and after his termination. Neither the amended counterclaim nor the affirmative defenses on file mention the meeting of July 12, 1989, that Irwin referred to in his affidavit, nor does either pleading refer to any of the alleged terms of any agreement reached at that meeting.

Judge Dean J. Sodaro entered summary judgment in favor of Anderson on the issue of defendants' liability under the Agreement. Judge Thomas P. Quinn entered final judgment and included language pursuant to Rule 304(a) (134 Ill. 2d R. 304(a)) on September 18, 1990.

The first issue we address is whether a genuine issue of material fact existed so as to preclude the granting of summary judgment in favor of Anderson.

Burton has argued that the trial judge applied the wrong standard in granting partial summary judgment. We find this not to be the case. The standards for the determination of whether a motion for summary judgment should be granted are clear. "In determining whether a genuine issue of material fact exists, the court must consider the pleadings, depositions, admissions, exhibits and affidavits on file and construe them strictly against the movant and in favor of the opponent." (*O'Hara v. Holy Cross Hospital* (1990), 137 Ill. 2d 332, 343, 561 N.E.2d 18.) Summary judgment should be granted "only when the right of the moving party is clear and free from doubt." *Gatlin v. Ruder* (1990), 137 Ill. 2d 284, 293, 560 N.E.2d 586.

Burton argues that the trial court erred in granting summary judgment, in that the trial court erroneously weighed the evidence and thus decided factual issues (see *Gatlin*, 137 Ill. 2d at 294). In so doing, Burton focuses on one comment of the trial judge, where the trial judge stated "[b]ut right now it is very iffy." In fact, this comment appears to be taken out of context. The trial court made this statement in relationship to discussing the counterclaim of Burton as to Anderson's alleged breach of fiduciary duties. Nothing in the record indicates that the trial court applied the wrong standard in considering Anderson's motion for summary judgment.

■■ Before proceeding to the merits of the case, a number of observations as to the somewhat curious posture of the briefing in the court below are in order. While plaintiff's motion was brought as a motion for partial summary judgment, it would have more appropriately been brought as a motion for judgment on the pleadings. (Ill. Rev. Stat. 1989, ch. 110, par. 2—615(e).) This is because the motion relied on only the complaint (and exhibits to the complaint such as the Agreement) and defendant's answer to the complaint. As shall be discussed, these pleadings were all that were necessary to decide the issue. Burton, in responding to the motion, failed to offer any counter evidentiary material. Then, improperly (by way of reply and for the first time), Anderson offered new evidentiary material, in the form of the "unresponded" to (or rather tardily responded to) request to admit. The admissions added no new material evidence to the motion. The record reveals that the only apparent consequence of the new evidentiary material was to further muddy the record by providing Burton with an opportunity to file the supplemental response and introduce the Irwin affidavit.

Regardless of the manner of briefing below, neither party now disputes that the Irwin affidavit is part of the record and that we should consider it.

The affidavit's description of the July 12, 1989, meeting, however, and the allusion to a subsequent agreement or modification of the shareholders' agreement did not prevent the entry of summary judgment. For one, the affidavit is somewhat unclear as to whether Anderson actually agreed to reimburse Irwin or the corporation for the taking of clients. Further, the affidavit is inherently contradictory, in that Irwin initially alludes to an agreement that Anderson would reimburse him for any clients he should take to his subsequent employer. However, the letter, which Irwin states was the entire agreement between the parties, says nothing about such reimbursement.

Finally, the alleged agreement of the July 12, 1989, meeting appears to *contemplate*, not prohibit, the solicitation of clients.

■■ As Burton itself is the appellant, not Irwin, it is irrelevant as to whether Irwin was owed a fiduciary duty. Anderson, by virtue of being an employee and an officer of Burton, owed Burton a fiduciary duty, and clearly, pretermination solicitation of Burton clients would be a breach of this fiduciary duty. (See *ABC Trans National Transport, Inc. v. Aeronautic Forwarders, Inc.* (1978), 62 Ill. App. 3d 671, 683, 379 N.E.2d 1228; *Dangeles v. Muhlenfeld* (1990), 191 Ill. App. 3d 791, 548 N.E.2d 45.) We accept that the unobjected-to affidavit established pretermination solicitation in this case.

However, Anderson is correct to argue that the affirmative defenses are not proper ones. The shareholder's agreement provides Anderson with the right to have his stock redeemed. Burton has not challenged the existence of sufficient consideration or argued that Anderson did not pay for his shares. Whether Anderson breached his fiduciary duty to the corporation by soliciting Burton clients would not defeat Anderson's right to his money. Thus, no new matter is introduced to defeat Anderson's claim, and the breach of fiduciary duty defense fails the test for a proper affirmative defense. (See *Worner Agency, Inc. v. Doyle* (1984), 121 Ill. App. 3d 219, 222, 459 N.E.2d 633.) Therefore, the breach of fiduciary duty, while the proper basis for a counterclaim (as remains between these parties below), is not an affirmative defense.

At argument on the motion for summary judgment, counsel for Burton contended that summary judgment should not be entered due to Anderson's alleged breach of fiduciary duty. The trial judge asked if this meant Anderson forfeited his stock. Counsel for Burton responded "I am not saying that. We believe we are entitled to a set off." At oral argument before this court, counsel for Burton argued that Anderson should not receive the value of his stock pursuant to the Agreement because the value of the Burton stock allegedly decreased as a result of the alleged solicitation. In support of this argument, our attention was called to the case of *Hagshenas v. Gaylord* (1990), 199 Ill. App. 3d 60, 557 N.E.2d 316. In that case, however, the trial court ordered the stockholder who breached his fiduciary duty to the corporation to turn his stock over to the corporation, after a trial on the merits. In fact, the appellate court in *Hagshenas* did not sanction such a remedy and reversed this action of the trial court. The trial court had ruled that the diminution in value of the corporation due to the breach of fiduciary duty was too speculative to form the basis of an award of damages. This ruling, the *Hagshenas* court held,

was error. (*Hagshenas*, 199 Ill. App. 3d at 75-78.) In this case, too, Burton will have the opportunity to recover for any diminution in value due to the alleged solicitation upon the trial of the counterclaim.

■ Likewise, the second pleaded affirmative defense—violation of the implied covenant of good faith—was not a proper basis to deny summary judgment in this case due to the doctrine's inapplicability to the case. While it is true that this obligation exists in every contract in Illinois (see *Martindale v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 154 N.E.2d 683), it is essentially used as a construction aid in determining parties' intent (*Martin v. Federal Life Insurance Co.* (1982), 109 Ill. App. 3d 596, 605, 440 N.E.2d 998), and "vague notions of fair dealing" do not form the basis for an independent tort. *Foster Enterprises, Inc. v. Germania Federal Savings & Loan Association* (1981), 97 Ill. App. 3d 22, 31, 421 N.E.2d 1375.

In the case of *Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 466 N.E.2d 958, the court discussed some of the different types of situations where the concepts of good faith and fair dealing have been implicated. These include the duty of a party to bring about a condition precedent or the discharging of an at-will employee due to improper motive. "Problems relating to good faith performance typically arise where one party to the contract is given broad discretion in performance. The dependant party must then rely on the party in control to exercise that discretion fairly." *Dayan*, 125 Ill. App. 3d at 990.

The instant case does not deal with an exercise of discretion by Anderson, and the record reveals no action by Anderson which rendered Burton unable to perform. Nor does the shareholder's agreement which Anderson seeks to recover under beg for interpretation. Furthermore, the alluded subsequent agreement or purported modification, which says nothing about Anderson no longer receiving stock redemption, appears to contemplate, not prohibit, the solicitation of Burton employees. Thus, the second pleaded affirmative defense, like the first, is legally improper.

■ In sum, we affirm the entry of summary judgment in favor of Anderson, given the entitlement of Anderson to have his shares redeemed under the shareholder's agreement. As a final matter we note that, in this case, a wage claim remains pending between the parties. Moreover, the allegation of breach of fiduciary duty on the part of Anderson remains pending in the form of Burton's counterclaim. Irwin averred that the value of the corporation has been diminished as a result of the alleged solicitation, and there is no evidence in the record to suggest otherwise. It is conceivable that Anderson's liability

to Burton may exceed what is due Anderson pursuant to the Agreement and wage claim. Under the circumstances and in fairness to Burton, we remand the case to the trial court with instructions to stay enforcement until final judgment in the underlying counterclaim.

Affirmed and remanded with instructions.

McNAMARA and EGAN, JJ., concur.