LASALLE NATIONAL BANK, as Trustee under Trust Agreement dated February 28, 1989, and known as Trust Number 113573, Kianoosh Jafari and Soussan Jafari, Plaintiffs–Appellants,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 93–2629.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1994.

Decided March 15, 1994.

Keith E. Roberts, Sr., Rodney W. Equi, Robert R. Verchota (argued), Mark J. Lyons, Keith E. Roberts, Jr., Donovan & Roberts, Wheaton, IL, for plaintiffs-appellants.

Peter Petrakis, Timothy J. Patenode (argued), Amy A. Hijjawi, Katten, Muchin & Zavis, Chicago, IL, for defendant-appellee.

Before CUMMINGS, COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff LaSalle National Bank, as Trustee for Kianoosh and Soussan Jafari, appeals the grant of summary judgment entered in favor of defendant Metropolitan Life Insurance Company. We affirm.

## BACKGROUND

In 1986, Dr. and Mrs. Jafari conceived the idea of converting a warehouse located at 2425 West 22nd Street in the Village of Oak Brook, Illinois, into a medical office building to be known as the Oak Brook Medical and Surgical Centre. Before purchasing the land, the Jafaris obtained a zoning variance from the Village permitting the construction of a medical center on the site as long as adequate parking—at least 131 spaces—was provided. Because the Jafaris' proposed site for the medical center was not large enough to provide 131 parking spaces, the Jafaris contacted Rapistan, Inc., which was leasing land adjacent to the project site. The adjacent land was owned by Northern Illinois Gas ("NIGas"). With NIGas's consent, Rapistan assigned its interest as lessee of NIGas's land to the Jafaris, giving the Jafaris parking spaces for an additional forty-six vehicles, thus enabling them to meet the zoning variance's parking requirement. After obtaining acquisition and construction financing from LaSalle National Bank, the Jafaris began renovations of the warehouse.

On May 23, 1990, the Jafaris and Metropolitan executed a written commitment for a five year, $7 million loan from Metropolitan to the Jafaris.[1] As a condition precedent to the loan agreement, the Jafaris were required to fulfill certain enumerated conditions before Metropolitan would be obligated to fund the loan. Among other conditions, the Jafaris were required to 1) obtain a first lien on all property necessary to satisfy the Village's zoning parking requirements; 2) establish that the medical center was in full compliance with all other zoning ordinances; and 3) provide a certificate of occupancy from the Village prior to the commitment's expiration date, November 19, 1990. The commitment stated that "[i]f all conditions contained herein have not been complied with on or before the expiration date, Metropolitan's obligations hereunder ... shall cease[.]" The commitment's expiration date

---

1. In their briefs the parties refer to the loan as an "end loan," also known as a "take-out loan" or a "permanent loan." "The permanent loan commitment [is] a promise by a lender to make a long-term loan on property when construction is completed ... [and] represents [an] assurance that ... funds will be available to pay the construction loan when it is due at the time of completion." Grant S. Nelson and Dale A. Whitman, Real Estate Finance Law § 12.3, at 845 (2nd ed. 1985). According to the Jafaris' complaint, the loan was needed "to pay off [the] construction loan [from LaSalle National Bank] ... and to further finance the Oak Brook Medical and Surgical Centre Project."

was extended twice by agreement between the parties to January 11, 1991.

According to Metropolitan, on January 11, 1991, the Jafaris had failed to satisfy the three conditions precedent listed above. With regard to the first condition, Metropolitan contended that the Jafaris failed to provide Metropolitan with a first lien on the leased NIGas property, and as a result the collateral was endangered because if NIGas revoked or refused to renew the lease, the medical center would no longer have the parking spaces required and would thus be in violation of the local zoning ordinances. After the commitment was signed the Jafaris provided Metropolitan with a survey of the project site which disclosed that the medical building encroached upon a setback line established by the Village.[2] The encroachment created a risk that in the event of casualty, Metropolitan might not be able to restore its collateral because the Village's zoning ordinances provided that a building which violated a set-back line could not be rebuilt over the lines to the original dimensions if the building were more than fifty percent destroyed. Finally, Metropolitan asserted that the Jafaris failed to provide a certificate of occupancy before the expiration date of the loan commitment. As a result of the Jafaris' failure to fulfill its obligations under the commitment, Metropolitan refused to provide the $7 million loan.

The Jafaris, through LaSalle, their trustee, filed suit against Metropolitan seeking to compel the issuance of the loan. Count I of the Jafaris' complaint alleged breach of the loan commitment contract. Count II alleged violation of the covenant of good faith and fair dealing. Count III asserted a claim of promissory estoppel. Count IV sought specific performance of the contract. Metropolitan responded with a motion for summary judgment.

After noting that the commitment provided that "[i]f all conditions contained herein have not been complied with on or before the expiration date, Metropolitan's obligations

hereunder ... shall cease," the district court found that the Jafaris had failed to secure a first lien on the NIGas property.[3] The court concluded that because the Jafaris had failed to meet one of the conditions precedent, Metropolitan as a matter of law was not under a duty to provide the loan, and since the failure to satisfy just one of the commitment's specified conditions was sufficient to relieve Metropolitan of its obligation to provide funding, the court did not address Metropolitan's assertions that the Jafaris also failed to satisfy other conditions precedent required by the commitment. The district judge held that "[t]he remaining counts of the complaint drop out either because they rely on Count I [breach of contract] or reiterate the allegations of that Count." The Jafaris, through LaSalle, appeal.

## ISSUE

Was the grant of summary judgment in favor of Metropolitan erroneous because genuine issues of material fact exist regarding the Jafaris' compliance with the terms of the commitment and Metropolitan's good faith in refusing to fund the loan?

## DISCUSSION

### A.

Initially we recite the standard of review we employ to address appeals from the grant of summary judgment. As we recently stated,

> Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed. R.Civ.P. 56(c). This court reviews 'issues decided on summary judgment *de novo*, and ... resolve[s] all reasonable inferences in favor of the nonmoving party,' *Kennedy v. United States*, 965 F.2d 413, 417 (7th

---

**2.** The Jafaris received a variance from the Village regarding the alleged set-back violation, but not until after the commitment's expiration date had passed.

**3.** The record discloses that the Jafaris approached NIGas and requested that NIGas issue a first lien in Metropolitan's favor on the leased property, but NIGas refused to comply.

Cir.1992), '[h]owever, the nonmoving party may not simply rest on his pleadings, but must demonstrate by specific evidence that there is a genuine issue of triable fact.' *Swanson v. Village of Lake in the Hills,* 962 F.2d 602, 603–04 (7th Cir.1992).... Rule 56(c) requires entry of summary judgment if the nonmoving party fails to come forth with evidence to refute the allegations of the moving party in the motion for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). *Hickey v. A.E. Staley Mfg.,* 995 F.2d 1385, 1388 (7th Cir.1993).

### B.

The Jafaris contend that Metropolitan knew when it signed the commitment that the Jafaris were leasing land from NIGas in order to meet the parking requirement. They argue in their brief that "[i]n light of [Metropolitan's knowledge of the lease and the possible risk presented by the loss of the lease] it is wholly unreasonable to suggest that the parties intended that Metropolitan would have no duty to fund the loan unless Plaintiffs provided Metropolitan with a first lien on the property leased from NIGas." They state that Metropolitan's alleged knowledge of the NIGas lease amounts to a waiver of the first lien requirement and raises genuine issues of material fact regarding Metropolitan's good faith. Even if there was such a requirement, the Jafaris argue, Metropolitan waived it by failing to bring it to their attention until the time for complying with the conditions precedent had nearly expired (November 19, 1990, and later extended on two occasions with the final cut-off date being January 11, 1991).

The parties agree that pursuant to the choice of law provision in the commitment, Illinois law governs. "Under Illinois law, a condition precedent is some act that must be performed or event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform." *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Insurance Company,* 962 F.2d 628, 633 (7th Cir. 1992) (citing *Kilianek v. Kim,* 192 Ill.App.3d

139, 139 Ill.Dec. 213, 548 N.E.2d 598 (1989)). "The failure to perform a condition precedent may be construed as a breach of contract." *Id.* (citing *Jones v. Seiwert,* 164 Ill.App.3d 954, 956, 115 Ill.Dec. 869, 872, 518 N.E.2d 394, 397 (1987); Restatement (Second) of Contracts § 225(3) (1981)).

The relevant language of the commitment is as follows:

**2. Title and Title Policy.** The Mortgage shall be a first lien on the unencumbered, marketable, fee simple absolute title to the Real Property ... [and t]here shall be delivered to Metropolitan a mortgagee or loan title policy or policies for the Loan Amount, issued by a company or companies and in form acceptable to Metropolitan, with endorsements, reinsurance and/or coinsurance required by Metropolitan, insuring title as above required and insuring Metropolitan as the sole owner of the Mortgage.

\* \* \* \* \* \*

**11. Compliance with Governmental Regulations.** Borrower represents that and shall furnish to Metropolitan evidence satisfactory to Metropolitan establishing that the Real Property and its use fully comply with all applicable zoning ... ordinances ... [which] evidence shall include, without limitation, a certificate of Borrower, a certificate or certificates of occupancy, material to establish that the zoning and/or subdivision approval is based on no real property, or rights appurtenant thereto, other than the Real Property[.]

When read together, provisions two and eleven require that the Jafaris provide Metropolitan with a first lien on the NIGas property. The defendant-appellee Metropolitan established a prima facie case when it demonstrated that under the terms of the commitment the Jafaris failed to comply with the requirement of securing and delivering the necessary first lien on the land leased from NIGas. Thus, Metropolitan was entitled to judgment as a matter of law.

We agree with the district court that there are no genuine issues of material fact concerning the question of whether Metropolitan waived the first lien requirement by

its alleged knowledge, prior to the signing of the commitment, of the NIGas lease or by its failure to timely inquire of the Jafaris whether they had obtained the first lien. Although "[c]onditions precedent may be waived when a party to a contract intentionally relinquishes a known right either expressly or by conduct indicating that strict compliance with the conditions is not required[,]" *Hardin*, 962 F.2d at 633, the record is barren of any indication that Metropolitan knowingly and intentionally relinquished the requirement that the Jafaris provide a first lien on all property necessary to satisfy the Village's zoning regulations. The first lien requirement demonstrates that Metropolitan was concerned that if the Jafaris for any reason defaulted on the NIGas lease, the collateral would be endangered. Moreover, Metropolitan was under no duty to remind the Jafaris of their obligations under the agreement, and the fact that the Jafaris asked for and received an extension of time demonstrates that the Jafaris knew of the impending deadline. We reject the Jafaris' claim that they were not required to provide a first lien on the NIGas property and that even if they were so required, Metropolitan waived the lien requirement.

As an alternative argument, the Jafaris contend that Metropolitan's knowledge of the NIGas lease raises genuine issues of material fact concerning Metropolitan's lack of good faith. Additionally, they argue that they offered Metropolitan reasonable alternatives to overcome their difficulty in obtaining the first lien (specifically, that Metropolitan loan them an additional $1.5 million so that they could purchase the land from NIGas or that they assign their leasehold to Metropolitan and prepay the rent) and that Metropolitan's rejection of their alternatives was unreasonable.

 An obligation of good faith and fair dealing is implied in every contract governed by Illinois law. *Anderson v. Burton Associates, Ltd.*, 218 Ill.App.3d 261, 161 Ill.Dec. 72, 578 N.E.2d 199 (1991). The implied duty of good faith, however, does not modify contractual provisions which plainly define the parties' duties. *See Continental Bank, N.A. v. Everett*, 964 F.2d 701, 705 (7th Cir.), *cert.*

*denied,* —— U.S. ——, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992). Here, there is no evidence that Metropolitan interfered with the Jafaris' pursuit of the first lien. To the contrary, on two occasions Metropolitan extended the expiration date of the loan commitment for a total of almost seven weeks to allow the Jafaris additional time to meet the conditions precedent under the commitment. We likewise reject the Jafaris' alternative arguments concerning Metropolitan's alleged failure to operate in good faith by rejecting the Jafaris' two alternatives. The Jafaris' first suggestion would have required Metropolitan to lend the Jafaris even more money, and their second alternative would not have solved the problem Metropolitan sought to address—that if the lease was terminated and the additional parking lost, the complex would be in violation of the zoning regulations. Even assuming that Metropolitan knew that it would be difficult for the Jafaris to secure a first lien on the NIGas property, the Jafaris have failed to establish that Metropolitan lacked good faith in dealing with the Jafaris. Metropolitan's first lien requirement was a reasonable method for protecting against the possible risk that the Jafaris might someday lose the additional parking (for example, if NIGas found a better use for its land) and thereby without the necessary real estate be in violation of the zoning requirements. As we stated in *A/S Apothekernes Laboratorium v. I.M.C. Chemical*, 873 F.2d 155, 159 (7th Cir.1989),

> in a business transaction both sides presumably try to get the best of the deal ... no legal rule bounds the run of business interest. So one cannot characterize self-interest as bad faith. No particular demand in negotiations could be termed dishonest, even if it seemed outrageous to the other party. The proper recourse is to walk away from the bargaining table, not to sue for 'bad faith' in negotiations.

Rather than rejecting Metropolitan's offer, which contained a term they may have had difficulty meeting, the Jafaris willingly signed a contract which provided that if they failed to obtain a first lien on the NIGas property, Metropolitan would not be required to provide the $7 million loan. Although

**1376**

questions of good faith are factual and therefore generally inappropriate for resolution on summary judgment, *Stumph v. Thomas and Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir.1985), in this case we are convinced it is quite apparent that the Jafaris' contentions concerning good faith are without merit.

■ Finally, we agree with the district judge that the Jafaris' remaining counts of the complaint fail because they are premised upon the dismissed breach of contract claim or are mere reiterations of that claim. With respect to Count II, Illinois does not recognize an action for violation of the implied covenant of good faith and fair dealing independent of a breach of contract claim, and we have demonstrated that the Jafaris' breach of contract claim was without merit. *See Anderson*, 161 Ill.Dec. at 76, 578 N.E.2d at 203. Count III of the Jafaris' complaint fails because the doctrine of promissory estoppel, which "is a theory of law by which a person may be held liable for a promise, for which there is no consideration . . . has never been considered available when the parties have entered into a contract which is binding under contract law[,]" as is the case here. *Wagner Excello Foods, Inc. v. Fearn International, Inc.*, 235 Ill.App.3d 224, 226, 176 Ill.Dec. 258, 266, 601 N.E.2d 956, 964 (1992). As to Count IV, specific performance is a remedy, not a cause of action.

## CONCLUSION

Because there are no genuine issues of material fact as to whether Metropolitan has any further obligation to provide the loan in question, Metropolitan is entitled to judgment as a matter of law and the trial court's grant of summary judgment in Metropolitan's favor is affirmed.