DARROW, District Judge,
concurring.
I agree that the Plan was an enforceable contract for the reasons stated in Judge Wood’s opinion, post I also agree that because the Plan was an enforceable contract, the district court properly dismissed Wilson’s unjust enrichment claim. I write separately because I find that although CEC did not breach the express terms of the Plan, Wilson has stated a plausible claim for breach of contract under an implied covenant of good faith and fair dealing theory.
I. CEC Did Not Breach the Express Terms of the Plan
In interpreting contract terms, a court must first look to the plain language of the contract itself. See Thompson v. Gordon, 241 Ill.2d 428, 349 Ill.Dec. 936, 948 N.E.2d 39, 47 (2011); Current Tech. Concepts, Inc. v. Irie Ents., Inc., 530 N.W.2d 539, 543 (Minn.1995). Reading the Plan’s explicit definition of “earned” to *672 gether with the Plan’s termination clause shows that CEC had the right to terminate the Plan, at which time CEC was not obligated to pay bonuses covering a student who was in the pipeline at the time the Plan was terminated. The definition of “earned” in the Plan is clear: an employee does not earn a bonus until the recruited student actually graduates or completes one academic year. The Plan defines “earned”:
[a]n employee is considered to have “earned” supplemental compensation under this Plan for the evaluation period during which his/her employment ends if, as of the employee’s termination date, the employee has exceeded his/her MPG Threshold for that evaluation period for students who have successfully completed either their academic program or one academic year of their program.
In addition to this definition, both examples in the Plan explain that the reason why an employee does not receive a bonus payment covering a student in the pipeline when his employment ends is because he “had not earned” that bonus before his termination date. Thus, under the express terms of the Plan, CEC was not obligated to pay Wilson a bonus for students in the pipeline at the time CEC terminated the Plan because Wilson “had not earned” the bonus. Accordingly, the district court properly dismissed Wilson’s express breach of contract theory.
Viewing the termination clause in light of the Plan’s final clause further supports this conclusion. See Thompson, 349 Ill.Dec. 936, 948 N.E.2d at 47 (“A contract must be construed as a whole, viewing each provision in light of the other provisions.”); Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 525 (Minn.1990) (“We construe a contract as a whole and attempt to harmonize all clauses of the contract.”). The final clause states: “Any interpretation of any provision of this Plan or of any regulatory authority may be made by CEC in its sole discretion.” Even if I were to find the termination clause ambiguous as it relates to students in the pipeline, the Plan gave CEC the right to reasonably interpret the termination clause. See Herzberger v. Standard Ins. Co., 205 F.3d 327, 330-31 (7th Cir.2000). Herzberger explains that courts ordinarily engage in de novo review of contract provisions, meaning no party’s interpretation is given any deference. But certain contracts can include language indicating that “one of the parties is to have discretion to interpret and apply the contract.” Id. at 330. In those cases where one party is given clear discretion to interpret the contract, the court is to defer to that party’s interpretation. The level of deference varies with the type of contract and the type of interpretation provision; but, at a minimum, that party’s reasonable interpretation must be upheld or the interpretation clause would be meaningless. See Cress v. Recreation Servs., Inc., 341 Ill.App.3d 149, 277 Ill.Dec. 149, 795 N.E.2d 817, 852 (2003) (“[A] court must give meaning and effect to every part of the contract.”); Brookfield Trade Ctr. v. Cnty. of Ramsey, 584 N.W.2d 390, 394 (Minn.1998) (“[W]e are to interpret a contract in such a way as to give meaning to all of its provisions.”). Here, the Plan gave CEC clear discretion to interpret the termination provision; thus, we must uphold CEC’s interpretation unless it is unreasonable. CEC’s interpretation is not unreasonable at least for the reasons already discussed.
II. Choice of Law
Before moving to the implied covenant of good faith and fair dealing analysis, it is necessary to first address a choice of law issue raised by the parties. The *673 parties dispute whether the Court should apply Illinois or Minnesota law. CEC argues that Minnesota would not read the implied covenant of good faith into the Plan. I conclude that both Illinois and Minnesota would read in the implied covenant of good faith and therefore decline to analyze the choice of law issue and instead apply the law of the forum state, here Illinois. Kochert v. Adagen Med. Int’l, Inc., 491 F.3d 674, 677 (7th Cir.2007); Barron v. Ford Motor Co. of Can., Ltd., 965 F.2d 195, 197 (7th Cir.1992).
As a general rule, the Minnesota Supreme Court recognizes that contracts contain an implied covenant of good faith—meaning that each party will not unjustifiably hinder the other party’s performance. See Zobel & Dahl Constr. v. Crotty, 356 N.W.2d 42, 45 (Minn.1984). CEC’s argument that Minnesota would not imply good faith and fair dealing into the Plan relies on a misreading of a Minnesota Supreme Court opinion: Hunt v. IBM Mid America Emp. Fed. Credit Union, 384 N.W.2d 853, 858 (Minn.1986). In Hunt, the Minnesota Supreme Court stated: “we have not read an implied covenant of good faith and fair dealing into employment contracts.” Id. CEC urges us to read “employment contracts” broadly to include any contract related to employment, namely the Plan, instead of more narrowly to mean at-will employment contracts. The narrow interpretation is correct. For one, the facts of Hunt were limited to terminating an at-will employee and the court relied on unique policy reasons related to an employer’s ability to discharge employees. See Hunt, 384 N.W.2d at 855, 858 (explaining that reading a good faith requirement into employee termination decisions would “subject each discharge to judicial incursion[ ]” (quoting Parnar v. Americana Hotels, Inc., 65 Haw. 370, 652 P.2d 625, 629 (1982))). Such policy concerns are not implicated here. Further, years after Hunt was decided, the Minnesota Supreme Court continued to declare that “every contract includes an implied covenant of good faith and fair dealing,” In re Hennepin Cnty. 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn.1995), suggesting that Hunt represents a narrow exception to the rule that all contracts imply a covenant of good faith. For these reasons, I find that Minnesota, like Illinois, would read the implied covenant of good faith and fair dealing into the Plan.
III. Wilson States a Plausible Breach of the Implied Covenant of Good Faith
Wilson claims that CEC breached the Plan under an implied covenant of good faith and fair dealing theory. I find that (a) Wilson properly raised the implied covenant of good faith as a breach of contract theory, not as an independent cause of action; (b) under the implied covenant of good faith, CEC’s discretion was limited by the reasonable expectations of the parties; (c) Wilson’s allegations support a reasonable inference that the CEC exercised its discretion in a manner contrary to the reasonable expectations of the parties. Because Wilson has plausibly alleged that CEC breached the Plan under an implied covenant of good faith and fair dealing theory, the district court erred by dismissing Wilson’s breach of contract claim.
A. Implied covenant of good faith as breach of contract theory
The implied covenant of good faith is “essentially used as a construction aid in determining parties’ intent.” Anderson v. Burton Assocs., Ltd., 218 Ill.App.3d 261, 161 Ill.Dec. 72, 578 N.E.2d 199, 203 (1991). Thus, an alleged violation of the implied covenant of good faith cannot form the basis for an independent tort action or *674 even its own cause of action. Id.; Indus. Specialty Chems. v. Cummins Engine Co., 902 F.Supp. 805, 811 (N.D.Ill.1995). Wilson properly argues that CEC’s alleged breach of the implied covenant of good faith and fair dealing is a theory of liability under Count I (Breach of Contract). See Indus. Specialty Chems., 902 F.Supp. at 811 (“[Plaintiffs] breach of the implied duty of good faith cannot stand as a separate count, but must be included within its breach of contract claim ... ”).[1] The implied covenant of good faith is simply a breach of contract theory and that is how Wilson applied it here.
B. CEC’s discretion to terminate the Plan and refuse to pay unearned bonuses was limited by the reasonable expectations of the parties
Three conditions had to be met before Wilson could earn a bonus on a recruited student. Those conditions were: (1) the recruited student must have successfully completed either her academic program or one academic year of her program, (2) Wilson must have remained employed by CEC, and (3) CEC must not have exercised its discretion to terminate the Plan before the first two conditions were met. But unlike the first two conditions, the third condition is solely within CEC’s control. When one party’s contractual obligation is “contingent upon a condition particularly within the power of that party,” the controlling party’s discretion in bringing about the condition is limited by the implied covenant of good faith. Dayan v. McDonald’s Corp., 125 Ill.App.3d 972, 81 Ill.Dec. 156, 466 N.E.2d 958, 971 (1984) (collecting cases). CEC was obligated to pay Wilson a bonus only if all three conditions were met. Because the ability to satisfy the third condition was “particularly within the power” of CEC (the party obligated to pay Wilson if all conditions were met), the implied covenant of good faith limited CEC’s ability to avoid the third condition in a manner inconsistent with the reasonable expectations of the parties. See id.
It bears emphasizing that CEC can breach the implied covenant of good faith even though the Plan gave CEC the unambiguous discretion to terminate the Plan and not pay unearned bonuses. See Tymshare, Inc. v. Covell, 727 F.2d 1145, 1154 (D.C.Cir.1984) (explaining that a party acting in accordance with an “expressly conferred contractual power” can still breach the implied covenant of good faith). Although at will employment contracts involve unique considerations not present here, looking at the implied covenant of good faith in the context of Illinois at-will employment cases further illustrates how an employer acting under an express contract provision can still breach the contract by exercising its discretion contrary to the reasonable expectations of the parties. An employer can terminate an at-will employee for almost any reason. But the employer’s vast discretion in firing an at-will employee is still limited by the reasonable expectations of the parties. While an at-will employee has no reasonable expectation that he will be discharged only for cause, see Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1444-45 (7th Cir.1992), an employer who discharges an at-will employee under the express terms *675 of the contract can still breach the contract if the employer exercised its discretion in a manner contrary to the reasonable expectations of the parties. See LaScola v. U.S. Sprint Commc’ns, 946 F.2d 559, 566 (7th Cir.1991) (“We recognize, as noted in Gordon, that ‘[t]he law seems fairly clear that an employee at will may not be deprived of commissions (in large part ‘earned’ prior to separating from the employer) by a discharge made in bad faith and intended to deprive the employee of the commissions.’ ”) (quoting Gordon v. Matthew Bender & Co., Inc., 562 F.Supp. 1286, 1297 (N.D.Ill.1983)); see also Jordan v. Duff and Phelps, Inc., 815 F.2d 429, 438 (7th Cir.1987) (“[N]o one ... doubts that an avowedly opportunistic discharge is a breach of contract, although the employment is at-will.”). Those cases recognize that whether the express terms of the at-will employment contract allow the employer to discharge the employee for any reason is not the end of the analysis. See Dayan, 81 Ill. Dec. 156, 466 N.E.2d at 972 (“In each of the foregoing cases a discharged employee brought suit against a former employer alleging that the employer was inspired by an improper motive, such as a desire to deprive the employee of health or pension benefits, and therefore the termination was in bad faith. The court, in each instance, recognized that the implied covenant of good faith could limit an employer’s otherwise unrestricted discretion in terminating an at-will employment contract.”). Rather, the implied covenant of good faith is used as a construction aid to assist the Court in determining whether the manner in which one party exercised its discretion under the contract violated the reasonable expectations of the parties when they entered into the contract.
In other words, just because the Plan gave CEC discretion to terminate the Plan without paying unearned bonuses does not mean that CEC is necessarily incapable of abusing that discretion. See also Carrico v. Delp, 141 Ill.App.3d 684, 95 Ill.Dec. 880, 490 N.E.2d 972, 976 (1986) (holding that a contract term allowing the bank to loan money “at bank discretion” only gave the bank “reasonable, not absolute, discretion”); Interim Health Care of N. Ill, Inc. v. Interim Health Care, Inc., 225 F.3d 876, 884 (7th Cir.2000) (“'When one party to a contract is vested with contractual discretion, it must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously or in a manner inconsistent with the reasonable expectations of the parties.”). Therefore, to show that CEC breached the implied covenant of good faith, Wilson must prove that CEC exercised its discretion in a manner contrary to the reasonable expectations of the parties. See Beraha, 956 F.2d at 1444-45 (citing Dayan, 81 Ill.Dec. 156, 466 N.E.2d at 972).
C. Wilson has plausibly alleged that CEC exercised its discretion in a manner contrary to the reasonable expectation of the parties
Resolving the issue of whether CEC acted contrary to the reasonable expectations of the parties is premature at this early stage in the case. The parties could not have reasonably expected that CEC would only terminate the Plan for good cause—the express terms of the Plan preclude such an expectation. But it was reasonable for Wilson to expect that avoiding the three conditions needed for Wilson to earn a bonus on a recruited student would not be the but-for reason for CEC exercising its discretion. See, e.g., Martindell v. Lake Shore Nat’l Bank, 15 Ill.2d 272, 154 N.E.2d 683, 691 (1958) (reading in a good faith requirement where defendant acted in bad faith under the terms of the contract to avoid the plaintiffs option *676 rights); LaScola, 946 F.2d at 566 (recognizing that an employer cannot exercise its discretion in bad faith to fire an at-will employee so to deprive that employee of commissions). CEC might have had a number of reasons to terminate the Plan early and refuse to pay bonuses that would have otherwise been earned before the ED regulations took effect. However, Wilson alleged that CEC’s stated explanation for terminating the Plan (that being the deadline for compliance with federal regulations) does not square with the timing of the termination. See Compl. at ¶ 20. This mismatch in explanation and action raises a permissible inference that the but-for reason for CEC’s action was to avoid the three conditions needed for Wilson to earn a bonus on a recruited student and therefore CEC acted contrary to the reasonable expectations of the parties.
Another plausible expectation of the parties is found in the termination provision itself. It contemplates that CEC might have to terminate the Plan “for regulatory compliance purposes.” And even though the termination clause also says CEC has the right to terminate the Plan for any reason, the fact that the parties anticipated that CEC might have to terminate the Plan “for regulatory compliance purposes” implies that the parties had a reasonable expectation about how CEC would exercise its discretion in this very situation. The parties might have reasonably expected that “for regulatory compliance purposes,” (1) CEC would terminate Wilson’s ability to earn a bonus when the pending regulations were announced or (2) CEC would terminate Wilson’s ability to earn a bonus when the regulations became effective. Accordingly, whether this language suggests that CEC’s early termination was consistent with or contrary to the reasonable expectations of the parties is unclear. But we must resolve this uncertainty in Wilson’s favor at the motion to dismiss stage. See Justice v. Town of Cicero, 577 F.3d 768, 771 (7th Cir.2009) (“[W]e must construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [plaintiffs] favor.”) (quoting Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir.2008)).
At the pleading stage, Wilson must simply allege a plausible breach of contract theory. To ultimately prevail, Wilson must prove that CEC exercised its discretion contrary to the reasonable expectations of the parties. For the reasons stated in my opinion, I find it plausible that Wilson might be able to do just that.

. See also Columbia Cas. Co. v. 3M Co., 814 N.W.2d 33, 37 (Minn.App.2012) ("3M seeks contractual damages on alternative theories: breach of the express terms of the insurance policies and breach of a provision that is read into most contracts under Minnesota law, namely, the implied covenant of good faith and fair dealing. Although 3M cannot recover damages on both theories for the same conduct ... Minnesota precedent does not preclude 3M from pleading both theories.”) (internal citations omitted).