PAUL HENTZE, d/b/a Hentze Animal Health Products, Plaintiff-Appellant and Cross-Appellee, v. GUS UNVERFEHRT, Defendant (Dairy Equipment Company, Defendant-Appellee and Cross-Appellant; DEC, International, Plaintiff-Appellant; William Hentze et al., Defendants-Appellees).

Fifth District   No. 5—90—0790

Opinion filed November 30, 1992.

CHAPMAN, J., concurring in part and dissenting in part.

Phillip A. Montalvo, of Wimmer, Stiehl & Mantalvo, P.C., of Belleville, for Paul Hentze.

Thomas W. Alvey, Jr., and Mariano V. Favazza, both of Thompson & Mitchell, of Belleville, for Dairy Equipment Company.

JUSTICE RARICK delivered the opinion of the court:

Plaintiff, Paul Hentze, d/b/a Hentze Animal Health Products, appeals from the judgment of the circuit court of Bond County awarding him only nominal damages in his claim against defendant Dairy Equipment Company (DECO). DECO cross-appeals the entire judgment plus the trial court's denial of its motions to dismiss, for summary judgment, and to set off against a settlement reached between Hentze and former codefendant Gus Unverfehrt. We affirm.

In April 1980, Hentze, then 18, opened an animal health store in the Greenville, Illinois, area. While Hentze attended college, his father, a dentist, ran the business with the assistance of a manager. In the fall of 1980, a district sales manager for DECO approached Hentze with the idea of becoming a dealership for all five of DECO's product lines. The nearest dealership, Gus Unverfehrt's, located in Centralia, refused to carry DECO's chemical products. Hentze agreed, and both father and son signed the dealership contract. Although Hentze Animal Health Products was a sole proprietorship, the district sales manager did not believe DECO would accept Hentze as a dealer without the financial backing of his father. The dealership contract accordingly listed Hentze Animal Health Products as a partnership.

Under the DECO contract, Hentze's territory consisted of an area north of Interstate 70. Hentze was told, however, not to turn away business from other areas outside his assigned territory if he was contacted. Because of his close proximity to the interstate, farmers to the south of the dividing line began contacting Hentze. As a result, Hentze had customers out of his assigned territory and in Unverfehrt's. Unverfehrt naturally disliked this competition. His solution to the problem was to have Hentze's dealership terminated, a solution he attempted several times with little success. In December of 1982, however, the district sales manager who established the Hentze dealership left DECO's employ. The new manager had little to do with Hentze and by the end of the next year had been convinced by Unver-

fehrt that Hentze's dealership should be terminated. In February of 1984, the new manager contacted the Hentzes and told them their dealership was being terminated in 60 days in accordance with the terms of their contract. Dr. Hentze immediately contacted the president of DECO to discuss the problem and learned no such decision, in fact, had been made. On May 10, 1984, however, a letter of termination from DECO's in-house counsel was sent to the Hentze dealership. This letter detailed 10 reasons for termination and made termination of the dealership contract effective July 15, 1984. Because 67% of Hentze's sales were derived from DECO products, and because other competing manufacturers already had dealers in the area, Hentze Animal Health Products went out of business. Hentze subsequently filed suit against DECO for breach of contract and against Unverfehrt for tortious interference with a contractual relationship. During the course of the bench trial, Unverfehrt and Hentze reached a settlement. The case accordingly proceeded against DECO alone. The trial court ultimately found in favor of Hentze but awarded only nominal damages in the amount of $500 plus costs. DECO's motion for setoff against the Unverfehrt settlement was denied.

Hentze argues on appeal the trial court erred in denying him consequential damages for DECO's breach of the dealership contract. DECO contends the trial court erred in finding it breached the contract, that Hentze was entitled to any damages, that DECO was not entitled to a setoff against the Unverfehrt settlement and that Hentze even stated a claim upon which relief could be granted. We address DECO's contentions first.

DECO initially asserts in its cross-appeal that Hentze's cause of action should have been dismissed for failing to state a claim upon which relief may have been granted. DECO bases it argument on the fact Paul Hentze filed suit individually, doing business as Hentze Animal Health Products, when the DECO dealership was held by father and son as a partnership. Because all members of a partnership are required to join in an action to recover a partnership asset, DECO believes Paul Hentze had no standing to bring this cause of action alone. With no standing, DECO concludes Hentze's cause of action failed to state a claim upon which relief could be granted and therefore should have been dismissed.

■ It is true as DECO asserts that the dealership contract lists Hentze Animal Health Products as a partnership. It is also true that the contract contains the signatures of both Paul Hentze and Dr. Hentze. Yet, the trial court found the business to be a sole proprietorship owned by Paul Hentze. We, sitting as a reviewing court, will not

substitute our judgment for that of the trial court in a bench trial unless that judgment is against the manifest weight of the evidence. (*E.g., Schroeder v. Meier-Templeton Associates, Inc.* (1984), 130 Ill. App. 3d 554, 559, 474 N.E.2d 744, 749.) We cannot say in this instance that the trial court's finding is against the manifest weight of the evidence. Father and son both testified the district sales manager was the one who filled in the blanks of the dealership contract after telling them Paul probably would not get the dealership without financial backing from his father. Father agreed to help and accordingly signed the contract. Through its district sales manager, DECO was aware Dr. Hentze was in reality only a guarantor. DECO argues that while this may be true Dr. Hentze still acted as a partner. Merely because Dr. Hentze ran the business while Paul was attending college does not mean he was a partner. The business still belonged to Paul, and he was the one who made all major decisions regarding its operations. Furthermore, all of Hentze Animal Health Products' tax records reveal it to be a sole proprietorship. We therefore agree Dr. Hentze was not a necessary party to Paul's cause of action, and the trial court properly denied DECO's motion for summary judgment.

  ■■■ Turning to the primary contention of the parties, the issue in its simplest form is whether the implied obligation of good faith applies to contracts which are terminable at will. All concede the dealership contract at stake here was terminable at will. Either party had the legal right to terminate the agreement with or without cause by furnishing written notice to the other party at least 60 days prior to the date of termination. Because of the inclusion of such a provision allowing termination with or without cause, DECO contends any obligation of good faith was expressly disavowed in the contract. The trial court concluded, notwithstanding such a provision, a party to a contract still has an obligation of good faith in all dealings relating to contractual performance. (See Ill. Rev. Stat. 1983, ch. 26, par. 1—203.) Although the issue under these types of circumstances has not been ruled upon previously by this district, we believe the trial court was correct. (But see *Harrison v. Sears, Roebuck & Co.* (1989), 189 Ill. App. 3d 980, 546 N.E.2d 248 (incongruous to imply covenant which restricts right to terminate employment at any time).) A covenant of fair dealing and good faith is implied in every contract absent express disavowal. (See *Foster Enterprises, Inc. v. Germania Federal Savings & Loan Association* (1981), 97 Ill. App. 3d 22, 28, 421 N.E.2d 1375, 1380.) Unlike DECO, we do not equate an at-will termination clause with an express disavowal of good faith. While it is true contract terms implied in law cannot supplant express terms of a con-

tract, implied terms can supplement express terms. (97 Ill. App. 3d at 31, 421 N.E.2d at 1382.) This is not to say, however, we are restricting an at-will termination clause to termination only for good cause. Parties who have entered negotiated contracts are entitled to enforce them to the letter "without being mulcted for lack of 'good faith.'" (See *Kham & Nate's Shoes No. 2., Inc. v. First Bank* (7th Cir. 1990), 908 F.2d 1351, 1357.) What we intend is more akin to "bad faith," or as others have called it, opportunistic advantage-taking (see *Kham*, 908 F.2d at 1357) or lack of cooperation depriving the other contracting party of his reasonable expectations (see Farnsworth, *Good Faith Performance & Commercial Reasonableness Under the Uniform Commercial Code*, 30 U. Chi. L. Rev. 666, 669 (1963)). This is precisely what happened here. Once Unverfehrt found a sympathetic ear, a determination was made to run Hentze out of business. The new district manager began telling farmers in the area not to deal with the Hentze dealership any more as it was incompetent. He threatened to terminate the Hentze dealership if its bid prices were not raised to match Unverfehrt's. Communication and assistance from the company and the district manager were no longer forthcoming. And, any communications which did reach Hentze were contradictory at best. First the dealership was terminated, then everything was fine. Next DECO claimed it would try to find an acceptable solution to the matter, and it sent Hentze a termination letter, all of which occurred within a four-month period while Hentze waited in limbo. Such actions amounted to a breach of the contract which DECO in turn used to terminate the contract. Such actions cannot be countenanced. Had DECO merely agreed to Unverfehrt's requests and sent Hentze a termination letter immediately, we would be hard-pressed to find any absence of good faith. DECO had the right to terminate the contract for no reason at all. But, when the new district manager and DECO engaged in the tactics used here, they went far beyond the intendments of any at-will clause. By doing so, they breached the contract and violated the implied obligation of good faith present in every contract. A party can, however, purposely breach a contract provided he is willing to put the other party in the position he would have been had the contract been fully performed. (*Album Graphics, Inc. v. Beatrice Foods Co.* (1980), 87 Ill. App. 3d 338, 350, 408 N.E.2d 1041, 1050.) Accordingly, the measure of damages for such a decision is that amount which would place the injured party in as satisfactory a position as he would have been in had the contract been performed (see *Student Transit Corp. v. Board of Education* (1979), 76 Ill. App. 3d 366, 369, 395 N.E.2d 69, 71) or, in other words, give him the loss of his bargain

plus consequential damages within the contemplation of the parties (see *Foster*, 97 Ill. App. 3d at 32, 421 N.E.2d at 1382). Hentze claims he sustained substantial consequential damages as evidenced by his expert's calculations of lost profits based on a five-year period of increased growth for a new business. Recovery of lost profits is allowable if the loss is proved with a reasonable degree of certainty and such profits were within the reasonable contemplation of the parties at the time the contract was entered. (See *Student Transit*, 76 Ill. App. 3d at 369-70, 395 N.E.2d at 71; see also *Midland Hotel Corp. v. Reuben H. Donnelley Corp.* (1987), 118 Ill. 2d 306, 315-16, 515 N.E.2d 61, 66.) While some period of time must be chosen, clearly five years of lost profits were not within the contemplation of the parties at the time of entering into the contract. The contract could be terminated by either party with 60 days' written notice. Because of this provision, damages for lost profits exceeding these 60 days could not have been contemplated. (See *Student Transit*, 76 Ill. App. 3d at 370, 395 N.E.2d at 71.) Consequently, Hentze's damages for lost profits are limited to no more than he would have sustained within a 60-day period. Hentze presented no evidence of damages limited to 60 days, but rather he calculated his damages for a five-year period. The calculations given cannot reasonably be broken down to establish 60 days of lost profits without engaging in pure speculation or conjecture. Having failed to establish a proper basis from which his damages could be computed, Hentze is entitled only to nominal damages. (See *Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 808, 443 N.E.2d 36, 42.) The trial court's award of nominal damages therefore is proper.

■■ ■ The final question remaining is whether DECO is entitled to a setoff against the Unverfehrt settlement. DECO argues as a codefendant it is entitled to set off the amount of judgment in favor of Hentze against any previous payments made to Hentze by any other codefendant, namely Unverfehrt. We disagree. Initially we must note the use of the term "setoff" in this context is inaccurate. Setoff refers to the situation when a defendant has a distinct cause of action against the same plaintiff who has filed suit against him. (See 33 Ill. L. & Prac. *Set-Off & Counterclaim* §2 (1970).) The procedural concept of setoff is now subsumed under the term "counterclaim." (See Ill. Rev. Stat. 1991, ch. 110, par. 2—608; see also *Olin Mathieson Chemical Corp. v. J.J. Wuellner & Sons, Inc.* (1966), 72 Ill. App. 2d 488, 492, 218 N.E.2d 823, 825.) What DECO is seeking is, in essence, a bare reduction of damages received by Hentze from another source. In tort cases, a payment by one tortfeasor diminishes a plaintiff's claim against all other tortfeasors responsible for the same harm in

order to ensure that the plaintiff receives only one satisfaction for any one injury. (See *Popovich v. Ram Pipe & Supply Co.* (1980), 82 Ill. 2d 203, 209, 412 N.E.2d 518, 521; *Dial v. City of O'Fallon* (1980), 81 Ill. 2d 548, 558, 411 N.E.2d 217, 222.) A similar rule applies in contract cases. The purpose of contract damages "is to place the nonbreaching party in the position he would have been in had the contract been performed, but not to place him in a better position or provide him with a windfall recovery." (*Feldstein v. Guinan* (1986), 148 Ill. App. 3d 610, 613, 499 N.E.2d 535, 537.) The underlying current behind both rules is that a plaintiff's claimed damages are to be reduced by any payments he has received in compensation for the same harm or injury. The key here is same harm or injury. The amount Hentze received from Unverfehrt in the tort settlement is not compensation for the same injury claimed in the breach of contract action against DECO. Consequently, DECO is not entitled to a reduction of its liability for damages.

For the aforementioned reasons, we affirm the judgment of the circuit court of Bond County.

Affirmed.

H. LEWIS, J., concurs.

JUSTICE CHAPMAN, concurring in part and dissenting in part:

I do not agree with the majority's conclusion that the amount plaintiff received from Unverfehrt in the tort settlement was not compensation for the same injury claimed in the breach of contract action against Dairy Equipment Company (DECO). In my judgment, DECO is entitled to a setoff under the circumstances of this case. Therefore, I respectfully dissent on this point only.