**L.A.P.D., INC., Plaintiff–Appellant,**

v.

**GENERAL ELECTRIC CORPORATION
and Prescolite●Moldcast Lighting
Company, Defendants–Appellees.**

No. 96–4189.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1997.

Decided Dec. 23, 1997.

Zane D. Smith, Vincent R. Kaminski, Smith, Rubin & Associates, Chicago, IL, for Plaintiff–Appellant.

John D. Parker (argued), Paul P. Eyre, Thomas L. Anastos, Baker & Hostetler, Cleveland, OH, Eugene E. Gozdecki, Joseph R. Ziccardi, Gozdecki & Del Giudice, Chicago, IL, for Defendant–Appellee General Electric Corporation.

Timothy F. Haley, Joshua R. Rich, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, T. Thomas Cottingham, III, Jennifer M. Busby (argued), Gary M. London, Burr & Forman, Birmingham, AL, for Defendant–Appellee U.S.I. Lighting Incorporated.

Before BAUER, FLAUM and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

In 1989 both General Electric Corporation and U.S.I. Lighting, Inc. (now known as Prescolite•Moldcast Lighting), appointed L.A.P.D., Inc., as a manufacturer's representative for lighting products in Illinois. A "manufacturer's representative" is an agent, which solicits orders but does not maintain an inventory. The manufacturer ships directly to the customer and pays a commission to the agent. General Electric authorized LAPD to solicit orders for high intensity discharge products such as the sodium vapor lamps used for urban highway lighting. The trade calls these products "industrial lighting." USI authorized LAPD to solicit orders for fluorescent and incandescent products often used inside office buildings and hospitals. The trade calls these products "commercial lighting." USI does not make industrial lighting products, and since the early 1980s GE has not made commercial lighting products. Having a manufacturer's representative in common enables the firms to offer a full range of products, better competing with manufacturers that make and sell full lines.

Early in 1992 LAPD sent USI a letter ending the representation as of March 31, 1992. This was consistent with the contract, which allowed either side to walk away, for any or no reason, on 30 days' notice. USI treated the termination as sufficient under the contract. In May 1992 GE sent LAPD the same kind of 30–day notice that LAPD had sent to USI. This time the recipient did not accept termination. LAPD filed suit contending that the termination violated both the contract and the federal antitrust laws. The contract theory is that, although GE gave adequate notice, it also had a duty to act in "good faith," which LAPD insists prevented GE from dismissing LAPD in order to have the same representative as USI. Because the contract does not require LAPD to serve as both firms' representative, implementing the joint-representation plan is not in "good faith," LAPD insists. (It also accuses USI of tortiously interfering with its contract with GE.) The antitrust theory is that GE and USI conspired to restrain trade by agreeing to use common representatives for their products. The district court issued a series of orders eliminating various theories of liability and eventually granted summary judgment to the defendants.

The argument that an ambulatory duty of "good faith" displaces express provi-

sions of contracts in Illinois (whose law governs the common-law claims) comes up frequently. More often than we care to recall, we have reminded litigants that "good faith" in contract law is a gap-filling approach designed for an issue "that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir.1990). See also, e.g., *Continental Bank, N.A. v. Everett*, 964 F.2d 701, 705 (7th Cir.1992) (Illinois law); *Market Street Associates Limited Partnership v. Frey*, 941 F.2d 588 (7th Cir.1991) (Wisconsin law). "While this obligation [to deal in good faith] exists in every contract in Illinois, it is essentially used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions." *Resolution Trust Corp. v. Holtzman*, 248 Ill.App.3d 105, 187 Ill.Dec. 827, 618 N.E.2d 418, 424 (1st Dist.1993). Litigants may not seek to litigate issues of "good faith" in lieu of abiding by explicit provisions of contracts. *Industrial Representatives, Inc. v. CP Clare Corp.*, 74 F.3d 128 (7th Cir.1996), and *Digital Equipment Corp. v. Uniq Digital Technologies, Inc.*, 73 F.3d 756, 758–59 (7th Cir.1996), hold that if a contract appointing a sales representative in Illinois permits discharge without cause, use of that power is not contingent on satisfying a court that the decision was an exercise of "good faith and fair dealing". One party need not reveal to the other the criteria that will lead it to terminate the relation, when the contract allows *any* reason (or none) to suffice. *CP Clare* and *Uniq* are fatal to LAPD's case. Yet LAPD ignores those decisions—indeed, it ignores every duty-of-good-faith opinion this court has ever issued, and all of the many Illinois cases on which those decisions relied. Its main brief relies entirely on two state cases that have nothing to do with clauses authorizing termination at will. When it approaches the critical issue—whether this common-law doctrine overrides contractual terms—LAPD's brief has only this to say: "As is well known to this Court, there exist certain rights and duties which may not be contractually waived. Citations omitted. The doctrine of good faith and fair dealing is precisely such a right." Yes, the "citations omitted" is in the original, underlined just as if it were a case! In the teeth of both state and federal cases, LAPD asserts the opposite in reliance on "Citations omitted". Come the reply brief, LAPD manages to cite one Illinois case dealing with distributorships, *Hentze v. Unverfehrt*, 237 Ill.App.3d 606, 178 Ill.Dec. 280, 604 N.E.2d 536 (5th Dist.1992), which it submits supports its position. Hardly. *Hentze* approves this court's analysis in *Kham & Nate's Shoes*, see 178 Ill.Dec. 280, 604 N.E.2d at 539, and holds that the terms of a sales agency contract control even in the face of a charge of opportunism by the adverse party. *Hentze* thus supports GE and USI. *CP Clare* contains a fuller discussion of Illinois law in general, and *Hentze* in particular; it is unnecessary to say more today. Because the termination was proper, and there is no evidence that USI had any goal other than achieving the joint representation that both GE and USI thought beneficial, it is impossible to call USI's role tortious.

As for the antitrust claim: it is very difficult to see how LAPD suffers antitrust injury. See *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990); *Local Beauty Supply, Inc. v. Lamaur, Inc.*, 787 F.2d 1197 (7th Cir.1986). LAPD is not a consumer of the defendants' products; it is a producer of sales intermediation, a vendor *to* the defendants. It does not contend that GE and USI have monopsonized the market for manufacturers' representatives. Because LAPD adequately alleges injury in fact and thus has standing under Article III, however, we may bypass the antitrust-injury issue to go straight to the merits. Whatever they are. Unfortunately, we can't make head or tail of the theory behind LAPD's claim. Antitrust law is designed to protect consumers from the higher prices—and society from the reduction in allocative efficiency—that occurs when firms with market power curtail output. See, e.g., *Elliott v. United Center*, 126 F.3d 1003, 1005 (7th Cir.1997); *Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1252 (7th Cir.1995). Joint sales representation might facilitate coordination among manufacturers, and coordination might enable those firms to injure the buyers. But those buyers are not complain-

ing—perhaps because USI and GE are not rivals in any segment of the industry, so their cooperation poses no greater threat than either firm could achieve unilaterally, and perhaps because neither firm has any market power. Employing a joint sales representative is not a *per se* offense as a "group boycott" or under any other theory. See *Northwest Wholesale Stationers v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985). In the language of antitrust, common sales agents are "ancillary restraints" that may promote consumers' welfare. Cf. *Polk Bros., Inc. v. Forest City Enterprises, Inc.*, 776 F.2d 185 (7th Cir.1985). Thus proof of market power is essential; without it, any case under the Rule of Reason collapses because consumers could not be injured by the defendants' hypothetical reduction in output. See *State Oil Co. v. Khan*, —— U.S. ——, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997); *Elliott*, 126 F.3d at 1005; *Uniq*, 73 F.3d at 761.

The district court found that GE and USI lack market power in commercial and industrial lighting, individually or jointly, in Illinois or elsewhere. According to LAPD, General Electric products account for approximately 15% of industrial lighting sales in the Chicago area, and USI makes some 5% of the commercial lighting sales. The parties' joint share of a consolidated "lighting market" including both lines would be approximately 10% (assuming that the two lines are equal in size). None of the litigants has computed the Herfindahl Index for this business, but we are not given any reason to suppose that the market is particularly concentrated. A 5% or 10% or 15% share of a normal market, where new firms are free to enter (and existing firms have a normal elasticity of supply) does not imply power to raise prices by curtailing output. So the Supreme Court held in *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984) (30% share insufficient). See also *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 666 (7th Cir.1987) (shares under 25% are insufficient as a matter of law to demonstrate market power).

■ LAPD tries to sidestep the defendants' inability to charge monopoly prices by arguing that GE automatically possesses market power because it sells more than $5 million in lighting products annually. Apparently LAPD has in mind the minimum formerly used for tie-in cases. See *Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969) (*Fortner I*); *Northern Pacific Ry. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958). But this was when tie-ins were deemed unlawful *per se* whenever they affected more than an insubstantial volume of commerce. A dollar yardstick never measured *market power*, as opposed to aggregate interstate transactions. The volume-of-commerce approach to tying transactions was eroded in *United States Steel Corp. v. Fortner Enterprises, Inc.*, 429 U.S. 610, 97 S.Ct. 861, 51 L.Ed.2d 80 (1977) (*Fortner II*), and abrogated in *Hyde*, which requires the use of standard market-power analysis. Proof that GE sells $5 million, or $5 billion, worth of industrial lighting products every year is irrelevant to the market-power issue. To show market power, a plaintiff must establish that the defendant's sales loom so large in relation to rivals' sales and production capacity that a reduction in output by the defendant could not quickly be made up by other firms' increased output. LAPD has not tried to show this and therefore has not reached first base on its antitrust claim.

AFFIRMED.