UNITED AIRLINES, INC., Appellant
and Cross–Appellee,

v.

GOOD TASTE, INC., d/b/a Saucy
Sisters Catering, Appellee
and Cross–Appellant.

Nos. S–7917, S–7947.

Supreme Court of Alaska.

July 9, 1999.

Rehearing Denied Aug. 13, 1999.

**1260**

Lawrence S. Robbins and Monica · C. Burke, Mayer, Brown & Platt, Washington, D.C., and Robert B. Baker, Baker, Brattain & Huguelet, Anchorage, for Appellant/Cross–Appellee.

Jeffrey A. Friedman and Richard H. Friedman, Friedman, Rubin & White, Anchorage, and Richard E. Speidel, Northwestern School of Law, Chicago, Illinois, for Appellee/Cross–Appellant.

Before: MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

*O P I N I O N*

BRYNER, Justice.

United Airlines terminated a catering contract with Saucy Sisters Catering in Anchorage. Saucy Sisters sued, claiming· fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing. The trial court dismissed the breach of contract claim but allowed the other claims to be tried. A jury, finding no fraud but a breach of the implied covenant, awarded Saucy Sisters damages. We hold that under Illinois law, which the parties agree governs, the contract could be terminated at will, and the implied covenant did not require United to have a legitimate business reason for termination. We therefore remand for entry of judgment for United.

## I. *FACTS AND PROCEEDINGS*

The background facts are undisputed; the trial court summarized them concisely as follows:

In 1987, United contacted Saucy Sisters' President and invited her to bid on United's in-flight catering contract. Shortly after United's invitation, Saucy Sisters entered into discussions/negotiations with United regarding the particulars of the catering contract and the obligations of the parties. On March 14, 1988, United awarded Saucy Sisters the catering contract. As a result of being awarded the contract, and in order to meet United's operation requirements for contracting caterers, Saucy Sisters expanded its operation extensively, spending roughly one million dollars in the process. [Footnote omitted.] A "Catering Agreement" ("Agreement") was signed by the parties and was performed for approximately one year. On May 18, 1989, United gave Saucy Sisters a ninety (90) day notice of termination by which it notified Saucy Sisters that its performance under the Agreement would terminate as of August 15, 1989. The Agreement was terminated August 15, 1989.

United's ninety day termination notice was in accordance with a no-cause termination provision found in the Catering Agreement. The provision states:

*Term:* The term of this Agreement shall commence on May 1, 1988, and shall continue for a period of 3 years(s) [sic]; provided, however, either party may terminate this Agreement upon ninety (90) days' prior written notice.

The facts surrounding this termination provision are at the center of this dispute. In its version of the facts, Saucy Sisters alleges that Roger Groth, United's contracting representative, assured Saucy Sisters that United had never used the ninety day termination provision in the past and that the provision existed only to provide United with an "out" in the event United chose not to fly to Anchorage in the future. Saucy Sisters claims it would not have undertaken such a massive and expensive expansion effort at the risk of a no-cause, ninety day termination notice but for Roger Groth's allegedly fraudulent representations regarding the restrictions on the termination provision. United fails to dispute these facts anywhere in the record, but stated during oral argument that Roger Groth would testify that he never made such statements regarding the termination provision.

Saucy Sisters sued United, alleging wrongful termination of the Catering Agreement, fraud, and breach of the covenant of good faith and fair dealing. The parties filed opposing motions for summary judgment: United sought judgment on all three claims; Saucy Sisters moved for judgment on its claim of fraud. Superior Court Judge Brian C. Shortell ruled on these motions. Relying on Section 22 of the Agreement,[1] Judge Shortell initially found that Illinois law would apply to all claims. The judge went on to find: (1) that the facts surrounding the fraud claim were disputed and should go to the jury; (2) that the ninety-day termination clause was an unambiguous no-cause termination provision and that United did not breach the express terms of that clause; and (3) that a genuine factual dispute existed as to Saucy Sisters' covenant of good faith and fair dealing claim, which was permissible under Illinois law, despite existence of a no-cause termination clause.

As to the implied covenant claim, the judge specifically stated:

Applied to the facts of the instant case, the covenant of good faith and fair dealing

may impose limits on the manner in which either of the parties could exercise the broad discretion given them by the no-cause termination clause found in Section III.... [A]lthough the implied covenant of good faith and fair dealing does not create an enforceable legal duty to be nice or to behave decently in a general way, it may require both United and Saucy Sisters to exercise the discretion afforded to them by the termination clause in a manner consistent with the reasonable expectation of both parties. This means that even though United did not breach the express terms of Section III of the Catering Agreement, it might still be found to have breached the contract by breaching the implied covenant of good faith and fair dealing. Whether United acted in such a way as to breach that covenant is a question of fact to be decided at trial.

(Citation omitted.)

United unsuccessfully moved for reconsideration of this ruling. Later, at the close of evidence at trial, it unsuccessfully moved for a directed verdict on the covenant claim. The jury returned a verdict finding that United had not engaged in fraud but had breached the covenant of good faith and fair dealing. The jury awarded Saucy Sisters $1,541,000 in damages. After adding prejudgment interest, costs, and attorney's fees to the verdict, Judge Shortell entered judgment in Saucy Sisters' favor for $3,604,843.57. United moved for a judgment notwithstanding the verdict and, in the alternative, for a new trial. Judge Shortell denied these motions.

## II. *DISCUSSION*

United appeals, claiming that the superior court misconstrued Illinois law in denying United's motion for summary judgment on Saucy Sisters' claim for breach of the implied covenant of good faith and fair dealing. United further contends that the jury's award of damages also was contrary to Illinois law and that the court erred in applying Alaska law in awarding attorney's fees and

---

1. Section 22 of the Agreement provided that "any dispute arising under or in connection with this Agreement, including any action in tort, shall be governed by the laws of the State of Illinois."

prejudgment interest. Saucy Sisters cross-appeals, claiming that, because the Agreement was ambiguous and extrinsic evidence concerning its meaning differed, the trial court erred in granting summary judgment against Saucy Sisters on its breach of contract claim. For simplicity's sake, we consider Saucy Sisters' argument on cross-appeal before we take up United's direct appeal arguments.

### A. Under Illinois Law, the Trial Court Properly Granted Summary Judgment to United on Saucy Sisters' Breach of Contract Claim.

Saucy Sisters asserts that the Agreement's ninety-day termination clause was ambiguous and allowed for varying interpretations, one of which might have sustained a breach of contract claim. Saucy Sisters asserts that this ambiguity created a genuine issue of material fact as to its claim for breach of contract, precluding summary judgment and requiring the claim to be submitted to the jury.

This court reviews trial court orders granting summary judgment de novo, drawing all inferences in favor of the opposing party, to determine whether genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law.[2] In the present case, the Agreement's ninety-day termination clause provided:

> *Term:* The term of this Agreement shall commence on May 1, 1988, and shall continue for a period of 3 years(s)[sic]; provided, however, either party may terminate this Agreement upon ninety (90) days' prior written notice.

The superior court found this provision clear and unambiguous, ruling that it "has only one reasonable interpretation, which is that the contract period is for three years

unless one of the parties decides to take[ ] affirmative action to end it early." Accordingly, the court determined as a matter of law that United did not breach the express terms of the contract when it terminated the catering contract upon ninety days' written notice.

Under Illinois law, the question of whether a contract is ambiguous is ordinarily one for the court to determine.[3] A disagreement as to contract terms does not in itself create an ambiguity; the reviewing court must initially seek to ascertain the meaning of the contract from the provisions of the contract itself.[4] Contract terms are to "be given their plain, ordinary, popular, and natural meaning."[5] And "[w]hen the language of a contract is unambiguous, the express provision governs and there is no need for construction or inquiry as to the intention of the parties."[6]

Here, the meaning of the disputed termination clause is clear and unambiguous on its face when its words are given "their plain, ordinary, popular, and natural meaning."[7] This provision clearly fixes the Agreement's term at three years, but allows each party to end it earlier by doing nothing more than giving the other party ninety days' notice. As the superior court aptly noted, such termination clauses are hardly uncommon:

> Anyone familiar with real world business practices would instantly recognize this provision as a no-cause termination provision that is often used to limit an otherwise definite term. No-cause termination clauses like the one considered here are widely used, and this one in particular would not cause anyone to second-guess its clear and unambiguous terms.

Because the Agreement's no-cause termination provision was clear and unambiguous on its face, the trial court, applying Illinois

2. *See West v. City of St. Paul,* 936 P.2d 136, 138 (Alaska 1997).

3. *See Newcastle Properties, Inc. v. Shalowitz,* 221 Ill.App.3d 716, 164 Ill.Dec. 221, 582 N.E.2d 1165, 1168 (1991).

4. *See id.* 164 Ill.Dec. 221, 582 N.E.2d at 1169.

5. *Id.* (quoting *Village of Glenview v. Northfield Woods Water & Util. Co.,* 216 Ill.App.3d 40, 159 Ill.Dec. 569, 576 N.E.2d 238 (1991)).

6. *P.A. Bergner & Co. v. Lloyds Jewelers, Inc.,* 112 Ill.2d 196, 97 Ill.Dec. 415, 492 N.E.2d 1288, 1291 (1986).

7. *Newcastle,* 164 Ill.Dec. 221, 582 N.E.2d at 1169.

law, had no occasion to consider extrinsic evidence supporting Saucy Sisters' assertion that it actually understood the provision to have a different meaning.[8] And because United undisputedly abided by the literal terms of the provision—terminating the Agreement upon ninety days' written notice to Saucy Sisters—the trial court properly concluded that no genuine issue of material fact existed and that United was entitled to summary judgment on Saucy Sisters' breach of contract claim.

B. *Under Illinois Law, the Trial Court Erred in Denying United's Motion for Summary Judgment on Saucy Sisters' Covenant of Good Faith and Fair Dealing Claim.*

United asserts that Illinois law does not permit an implied covenant of good faith and fair dealing to supplant the clear language of a contract allowing termination without cause. According to United, because the disputed Agreement clearly and unambiguously allowed either party to terminate upon ninety days' notice and did not require good cause for termination, the trial court erred in finding the implied covenant applicable and in denying United summary judgment on this claim.

Saucy Sisters responds that the ninety-day termination clause gave both parties broad discretion to terminate their agreement. In such situations, Saucy Sisters argues, Illinois law applies the implied covenant of good faith and fair dealing as a limit on the permissible bounds of contractual discretion. Thus, in Saucy Sisters' view, the implied covenant applied in this case, and the trial court properly allowed this claim to go to the jury.

We review orders denying summary judgment de novo and affirm if we find that a genuine issue of material fact exists or that the moving party is not entitled to judgment as a matter of law.[9] In deciding if a genuine issue of material fact exists, we draw all reasonable inferences in favor of the non-moving party.[10] Here, the primary dispute concerning the trial court's summary judgment ruling centers on the correct interpretation of Illinois law. This is a purely legal question that we decide independently, based on our review and evaluation of applicable Illinois precedent.

■ The covenant of good faith and fair dealing is well accepted in Illinois, and its broad contours are firmly established: the covenant is implied in every contract.[11] The implied covenant guides the construction of contracts without creating independent duties for the contracting parties.[12] Its implied terms cannot modify the express terms of the contract.[13]

■ The covenant operates to define the intent of contracting parties when a contract is ambiguous or when it vests the parties with broad discretion as to its performance.[14] In cases involving unambiguous contracts that vest broad discretion in one of the parties, the covenant operates by constraining that party to exercise its discretion reasonably and fairly: "not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties."[15]

Of course, a contractual no-cause termination clause may accurately be characterized as vesting the parties with broad discretion as to the termination of their contract; for this reason, it might be plausible to argue in the case of a no-cause termination clause that the implied covenant requires the par-

---

8. *See id.*

9. *See Western Pioneer v. Harbor Enter.*, 818 P.2d 654, 656 n. 3 (Alaska 1991).

10. *See Smith v. State*, 921 P.2d 632, 634 (Alaska 1996).

11. *See Martindell v. Lake Shore Nat'l Bank*, 15 Ill.2d 272, 154 N.E.2d 683, 690 (1958).

12. *See Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1105–06 (7th Cir.1997); *Anderson v. Burton Assocs., Ltd.*, 218 Ill.App.3d 261, 161 Ill.Dec. 72,

578 N.E.2d 199, 203 (1991); *see also Korogluyan v. Chicago Title & Trust Co.*, 213 Ill.App.3d 622, 157 Ill.Dec. 690, 572 N.E.2d 1154, 1161 (1991).

13. *See Northern Trust Co. v. VIII South Mich. Assocs.*, 276 Ill.App.3d 355, 212 Ill.Dec. 750, 657 N.E.2d 1095, 1104 (1995).

14. *See id.*

15. *Id.*

ties to terminate reasonably—that is, for some legitimate reason. This is essentially the view that Saucy Sisters advocated at trial. And in denying United's pretrial motion for summary judgment on the implied covenant claim, the court adopted Saucy Sisters' theory:

> [A]lthough the implied covenant of good faith and fair dealing does not create an enforceable legal duty to be nice or to behave decently in a general way, it may require both United and Saucy Sisters to exercise the discretion afforded to them by the termination clause in a manner consistent with the reasonable expectation of both parties.

Saucy Sisters thereafter relied on this theory at trial. It expressly argued to the jury that even if United made no misrepresentations concerning the ninety-day no-cause termination clause, the implied covenant prevented it from violating Saucy Sisters' reasonable expectation that the agreement would be terminated only for a legitimate business reason:

> [Y]ou can't terminate for an arbitrary or capricious reason or to prevent the other party from obtaining reasonably anticipated benefits. You can't violate those reasonable expectations just because you find a better deal. Just because it's now in your financial interest to walk away from the agreement that you made.

Saucy Sisters invoked the same theme in opposing United's motions for judgment notwithstanding the verdict and a new trial on the implied covenant claim:

> [T]he United catering contract gave both parties discretion. There was, however, no

express provision saying either party could exercise that discretion unreasonably. Accordingly, the implied covenant of good faith and fair dealing was applicable, and neither party was permitted to terminate the contract for arbitrary and capricious reasons.

Applying this view of the law to the facts here, Saucy Sisters insisted that the jury's verdict on the implied covenant claim should be upheld because "reasonable jurors could have found that [Saucy Sisters] performed the contract properly, that any problems in performance were caused by United, and that United terminated the contract without any legitimate business reason whatsoever."

 But as far as we can determine, Illinois courts have never held the implied covenant to require good cause or a legitimate business reason for terminating a contract with an express no-cause termination provision. To the contrary, Illinois courts seem to have recognized consistently that "terminable-at-will contracts are generally held to permit termination for any reason, good cause or not, *or for no cause at all.*"[16] The courts have likewise recognized that applying the implied covenant to limit the terms of a no-cause termination provision would be "incongruous" with this general rule[17] and might "eviscerate the at will doctrine altogether."[18]

Several courts have reconciled this tension between no-cause termination clauses and the implied good faith covenant by explaining that parties to contracts with such clauses must reasonably expect the possibility of ter-

---

**16.** *Jespersen v. Minnesota Mining & Mfg. Co.*, 288 Ill.App.3d 889, 224 Ill.Dec. 85, 681 N.E.2d 67, 71 (1997) (citing *Alderman Drugs, Inc. v. Metropolitan Life Ins. Co.*, 161 Ill.App.3d 783, 113 Ill.Dec. 704, 515 N.E.2d 689 (1987)) (emphasis added), *aff'd*, 183 Ill.2d 290, 233 Ill.Dec. 306, 700 N.E.2d 1014 (1998). *See also Digital Equip. Corp. v. Uniq Digital Tech., Inc.*, 73 F.3d 756, 759–60 (7th Cir.1996) (holding that a termination clause allowing for termination of a distributorship contract *at the end of any year could* not be modified by the duty of good faith even though the manufacturer relied on the contract and invested $1 million in facilitating the needs of the contract); *Gordon v. Matthew Bender & Co.*, 562 F.Supp. 1286, 1290 (N.D.Ill.1983) (hold-

ing that if the implied obligation to deal in good faith were allowed to create a cause of action in an employment-at-will situation, it would "eviscerate the at will doctrine altogether"); *Harrison v. Sears, Roebuck & Co.*, 189 Ill.App.3d 980, 137 Ill.Dec. 494, 546 N.E.2d 248, 256 (1989) (holding that putting implied restrictions on an employment-at-will contract would be inconsistent with the express terms of the contract which allowed for termination at any time).

**17.** *Harrison*, 137 Ill.Dec. 494, 546 N.E.2d at 256.

**18.** *Gordon*, 562 F.Supp. at 1290.

mination for any reason or no reason at all.[19] But in any event, the prevailing rule in Illinois, however rationalized, unmistakably favors the provisions of an express no-cause contract over potentially conflicting demands of the implied covenant: "[T]he duty of good faith and fair dealing does not override the clear right to terminate at will, since no obligation can be implied which would be inconsistent with and destructive of the unfettered right to terminate at will."[20]

To be sure, some Illinois precedent hints that the implied covenant might apply in particular at-will termination situations. In *Hentze v. Unverfehrt*, the Illinois Court of Appeals, finding bad faith conduct that amounted to "opportunistic advantage-taking," held the implied covenant applicable when a company terminated an at-will dealership contract and engaged in a variety of other bad-faith tactics specifically aimed at driving one of two competing dealers out of business.[21]

Saucy Sisters relies heavily on *Hentze*. It asserts that, as interpreted in *Hentze*, "[T]he covenant of good faith and fair dealing requires, at a minimum, a proper motive to exercise the power [of termination without cause]." Because, in Saucy Sisters' view, the evidence at trial supported the conclusion that United ended its catering contract to seek a more lucrative arrangement with a competing caterer (Marriott), Saucy Sisters asserts that United's action, under *Hentze*'s approach, amounted to impermissible advantage-taking: "[A] party engages in opportunistic advantage-taking in Illinois when exercising the reserved power

to terminate unreasonably and with an improper motive[.]"

But Saucy Sisters reads *Hentze* too broadly. The *Hentze* court took pains to acknowledge that, under the settled Illinois rule, the defendant company, DECO, "had the right to terminate the [dealership] contract for no reason at all."[22] So too, the *Hentze* court emphasized that, "[h]ad DECO merely ... sent Hentze a termination letter ..., we would be hard-pressed to find any absence of good faith."[23] The court thus made clear that its invocation of the implied covenant rested not on DECO's termination of the contract without, as Saucy Sisters puts it, "a proper motive to exercise the power," but rather on DECO's deliberate efforts to drive Hentze out of business by using other "tactics ... [that] went far beyond the intendments of any at-will clause."[24]

In short, the opportunistic advantage-taking described in *Hentze* was considerably more than an absence of the "legitimate business reason" that Saucy Sisters insists is a necessary ingredient for a valid at-will termination under Illinois law; it was instead a subjectively improper purpose—the malicious goal of driving Hentze out of business—combined with a variety of objectively unfair tactics designed to achieve that goal.[25]

Stripped of its implied covenant trappings, Saucy Sisters' broad reading of *Hentze*—its contention that United could not act arbitrarily or capriciously, but instead was required to have a legitimate business reason for termination—amounts to a claim that United could terminate the catering contract only for cause. But, as we have seen, this claim cannot be countenanced under Illi-

---

19. See *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1444–45 (7th Cir.1992); *Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp.*, 913 F.Supp. 1088, 1143 (N.D.Ill.1995) (vacated in part pursuant to settlement, September 18, 1995).

20. *Jespersen*, 224 Ill.Dec. 85, 681 N.E.2d at 71.

21. 237 Ill.App.3d 606, 178 Ill.Dec. 280, 604 N.E.2d 536, 539–40 (1992).

22. *Id.* 178 Ill.Dec. 280, 604 N.E.2d at 540.

23. *Id.*

24. *Id.*

25. So described in *Hentze*, the practices prohibited by the implied covenant of good faith and fair dealing resemble the kind of opportunistic advantage-taking this court has recognized as impermissible under Alaska's law governing the implied covenant. See, e.g., *Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983). And, like Illinois courts, we have recognized that this prohibition against subjectively improper opportunism does not convert an at-will contract into a contract requiring good cause for termination. See *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997).

nois law. The settled rule in Illinois remains that a contract expressly terminable at will may be ended for any reason or no reason at all.[26] *Hentze* does indicate that Illinois law might provide a measure of protection against a termination specifically motivated by bad faith and accompanied by unfair tactics.[27] But Saucy Sisters neither alleged nor proved "opportunistic advantage-taking"[28] of this kind. To the contrary, Saucy Sisters' complaint alleged no ulterior motive or subjective bad faith on United's part for terminating the contract, and its evidence at trial suggested only that United might have ended the contract in order to strike a better bargain with Marriott, not—as United claimed—because of Saucy Sisters' poor performance.

United's alleged desire for a more advantageous arrangement with Marriott certainly might not amount to "good cause" for terminating Saucy Sisters' contract, and from Saucy Sisters' perspective termination for this reason might even amount to arbitrary or capricious conduct, carried out for no legitimate business reason. But under Illinois law, the goal of achieving higher profits from a lower-bidding supplier is not itself inherently impermissible and does not amount to opportunistic advantage-taking; neither does reliance on an express at-will termination clause to attain this goal evince subjective bad faith or amount to an objectively unfair tactic.

Citing *Dayan v. McDonald's Corporation*,[29] the dissent concludes that Illinois would invoke the implied covenant to preclude United from terminating its contract "in a manner inconsistent with the reason-

able expectations of the parties."[30] But *Dayan* does not support this conclusion.[31] Instead, it narrowly limits its broad view of the implied covenant to franchise contracts, noting that this view reflects "judicial concern over longstanding abuses in franchise relationships, particularly contract provisions giving the franchisor broad unilateral powers of termination at will."[32] And even in franchise cases, *Dayan* seemingly would apply its broad interpretation of the good faith requirement only when "the exercise of discretion [is] vested *in one of* the parties to a contract."[33]

In fact, *Dayan* expressly recognizes that Illinois law applies a narrower interpretation of the implied covenant outside the area of franchise contracts. *Dayan* describes Illinois law as holding that the covenant protects at-will employees only when a termination is "inspired by an improper motive, such as a desire to deprive the employee of health or pension benefits[.]"[34] This is essentially the rule of law that we conclude Illinois would apply to the present case. As a matter of Illinois law, the appropriateness of this narrow view of the implied covenant— rather than *Dayan*'s broader franchise rule—seems apparent given that the contract at issue here does not involve a franchise. Moreover, the contract's termination clause applied not just to United but to Saucy Sisters as well, giving both parties contractual discretion to terminate at will upon ninety days' notice.

That Illinois law would narrowly construe the implied covenant's effect on this contract seems unmistakable in light of *Jespersen v. Minnesota Mining and Manufacturing Co.*[35]

---

26. *See Jespersen*, 224 Ill.Dec. 85, 681 N.E.2d at 71.

27. *See Hentze*, 178 Ill.Dec. 280, 604 N.E.2d at 540.

28. *Id.* 178 Ill.Dec. 280, 604 N.E.2d at 539.

29. 125 Ill.App.3d 972, 81 Ill.Dec. 156, 466 N.E.2d 958 (1984).

30. Dissent at 1268 (quoting *Dayan*, 81 Ill.Dec. 156, 466 N.E.2d at 972).

31. *Seegmiller v. Western Men, Inc.*, 20 Utah 2d 352, 437 P.2d 892 (1968), also mentioned by the dissent, fails to support the dissent's conclusion

because, like *Dayan*, it involves a franchise contract. Moreover, because the franchise at issue in *Seegmiller* was terminated for good cause, *Seegmiller*'s interpretation of the good faith covenant is dictum.

32. *Dayan*, 81 Ill.Dec. 156, 466 N.E.2d at 973.

33. *Id.* 81 Ill.Dec. 156, 466 N.E.2d at 972 (emphasis added).

34. *Id.*

35. 288 Ill.App.3d 889, 224 Ill.Dec. 85, 681 N.E.2d 67 (1997), aff'd, 183 Ill.2d 290, 233 Ill. Dec. 306, 700 N.E.2d 1014 (1998).

The Illinois Court of Appeals there emphatically rejected a claim that the implied covenant barred termination of an at-will distributorship contract without good cause:

> [T]erminable-at-will contracts are generally held to permit termination for any reason, good cause or not, or for no cause at all. Mindful that every contract carries the duty of good faith and fair dealing, as a matter of law, absent express disavowal by the parties, the duty of good faith and fair dealing does not override the clear right to terminate at will, since no obligation can be implied which would be inconsistent with and destructive of the unfettered right to terminate at will.[36]

The Illinois Supreme Court recently affirmed the decision of the court of appeals, observing, "Both parties here enjoyed the right to terminate the agreement at will, which means they could terminate the agreement for any reason or no reason without committing a breach of contract." [37]

▇▇▇ In sum, we conclude that the trial court was mistaken in ruling that the implied covenant of good faith and fair dealing might "require both United and Saucy Sisters to exercise the discretion afforded to them by the termination clause in a manner consistent with the reasonable expectation of both parties." Under Illinois law, Saucy Sisters could not reasonably expect something other than what it expressly bargained for: a contract expressly terminable for any cause or no cause upon ninety days' notice. Because we conclude that the court erred in submitting Saucy Sisters' implied covenant claim to the jury, we reverse the judgment against United.[38] Our disposition makes it unnecessary to consider any other arguments raised on appeal or cross-appeal.

## III. CONCLUSION

We AFFIRM the trial court's order granting United summary judgment on Saucy Sisters' breach of contract claim, but REVERSE its order denying United summary judgment on the implied covenant claim. Accordingly, we VACATE the judgment and REMAND for entry of judgment in favor of United.

MATTHEWS, Chief Justice, dissenting.

While I agree with the majority that Illinois law "favors the provisions of an express no-cause contract over potentially conflicting demands of the implied covenant [of good faith and fair dealing]," [1] that type of contract is not at issue in this case. If this contract creates a right to terminate for no cause, the right exists because of a legal inference, not because that right is explicitly stated. I believe that a different legal inference should be drawn: that either party could terminate the contract for no cause if the reason for termination was consistent with the parties' reasonable expectations.[2]

This reading is consistent with the implied covenant of good faith and fair dealing as expressed in section 205 of the Restatement (Second) of Contracts: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." The Supreme Court of Illinois has adopted a similar rule: "Every contract implies good faith and fair dealing between

---

**36.** *Id.* 224 Ill.Dec. 85, 681 N.E.2d at 71 (citations omitted).

**37.** 233 Ill.Dec. 306, 700 N.E.2d at 1017.

**38.** Saucy Sisters asserts that United waived its right to appeal the implied covenant issue by failing to object to, or propose alternative versions of, the jury instruction concerning the covenant. But this instruction merely paraphrased Saucy Sisters' interpretation of Illinois law governing the implied covenant. The trial court expressly adopted this interpretation of Illinois law in denying United's pretrial motion for summary judgment on the implied covenant claim and tacitly adhered to it in summarily denying United's mid-trial motion for directed verdict on the claim; later, the court again tacitly adhered to this interpretation in denying United's post-trial motions for JNOV and a new trial. Given these circumstances, United did not waive its right to appeal by failing to object separately to the implied covenant instruction. *See Landers v. Municipality of Anchorage,* 915 P.2d 614, 617 (Alaska 1996); *cf. Brown v. Estate of Jonz,* 591 P.2d 532, 534 (Alaska 1979).

**1.** Op. at 1264 – 1265.

**2.** *See* 3A Arthur Corbin, *Corbin on Contracts* § 654A, at 114 (1999 Supp.).

the parties...."[3] A review of *Martindell* and the Illinois Appellate Court cases cited in the majority opinion gives me no reason to think that Illinois law respecting the covenant of good faith and fair dealing is inconsistent with the Restatement's discussion of the covenant.

According to the Restatement, good faith enforcement "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party."[4] One type of violation recognized by the Restatement is the "abuse of a power ... to terminate the contract."[5] As authority for this comment the Restatement draws on various types of cases, including those involving franchise terminations.[6]

The covenant of good faith and fair dealing was discussed in *Dayan v. McDonald's Corp.*,[7] a franchise termination case involving Illinois law. The court reviewed its understanding of Illinois law regarding the covenant in terms materially indistinguishable from the Restatement:

> As the above authorities demonstrate, the doctrine of good faith performance imposes a limitation on the exercise of discretion vested in one of the parties to a contract. In describing the nature of that limitation the courts of this state have held that a party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.[8]

*Dayan* confirms my view that the termination clause in the present case—since it does not state that the contract may be canceled without cause—should be construed to incorporate the covenant. Quoting with approval from a Utah case which held that the implied covenant of good faith limited the power of the franchisor to terminate a franchise agreement without good cause where, by its terms, the franchise was terminable upon sixty days written notice to the franchisee, the court in *Dayan* stated:

> when parties enter into a contract of this character, and there is no express provision that it may be cancelled without cause, it seems fair and reasonable to assume that both parties entered into the arrangement in good faith, intending that if the service is performed in a satisfactory manner it will not be cancelled arbitrarily.[9]

The parties in this case could have agreed on a termination provision which expressly stated that cancellation could be on any basis whatsoever, reasonable or unreasonable, just as they could have adopted a termination provision which required cause. They did neither. Instead, they left the provision open to differing interpretations. It is therefore logical to infer that the parties intended to operate in an atmosphere of good faith and fair dealing, and that the covenant applies.

The majority opinion dismisses the significance of *Dayan* by reading into it an artificial limitation.[10] But *Dayan* gives no indication that its holding is limited to cases involving franchises, and there is no logic to such a rule. Franchise cases are not a special subcategory of contract law, but merely a type of contract case that reflects an imbalance of power between contracting parties. The Restatement of Contracts uses franchise cases as appropriate examples to illustrate general rules of contract law.[11] Similarly, the "unilateral power[ ]"

---

3. *Martindell v. Lake Shore Nat'l Bank*, 15 Ill.2d 272, 154 N.E.2d 683, 690 (1958).

4. Restatement (Second) of Contracts § 205 cmt. a (1981).

5. *Id.* at cmt. e.

6. *See id.*, Reporter's Note to § 205, cmt. e.

7. 125 Ill.App.3d 972, 81 Ill.Dec. 156, 466 N.E.2d 958 (1984).

8. *Id.* 81 Ill.Dec. 156, 466 N.E.2d at 972 (citations omitted).

9. *Id.* (quoting *Seegmiller v. Western Men, Inc.*, 20 Utah 2d 352, 437 P.2d 892 (1968)).

10. Op. at 1266.

11. *See* Restatement (Second) of Contracts § 205, Reporter's Note to cmt. e (1981) (citing various franchise and non-franchise cases to illustrate concept of good faith in enforcement).

of the franchisor is not a significant distinguishing element. The problem is that the franchisee—the economically weaker party—must spend large amounts to begin business and then is at risk of losing the investment based on the decision of the franchisor—the economically stronger party. The problem is not solved by giving the weaker party a similar power of termination. In other words, to use the *Dayan* parties as an example, Dayan's vulnerability to termination of his franchise by McDonald's is hardly changed by giving him the power to terminate the franchise. This is the situation in the present case.[12]

While it would be sufficient to end the analysis here, the following observations concerning the covenant's application to the facts of this case seem worth making.

Determining the reasonable expectations of contracting parties is not necessarily an easy task. Contract language must be considered along with the parties' discussions and the purposes of the contract.[13] And it may be useful to ask what the parties would have done had they considered the precise issue when the contract was formed. The Supreme Court of Delaware addressed this recently in *DuPont v. Pressman:*[14]

> The Covenant is best understood as a way of "implying terms in the agreement." It is a way of "honoring the reasonable expectations created by the autonomous expressions of the contracting parties."

> One method of analyzing the Covenant is to ask what the parties likely would have done if they had considered the issue involved. "[I]s it clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of ... had they thought to negotiate with respect to that matter?" [T]he Covenant "is a stab at

approximating the terms the parties would have negotiated had they foreseen the circumstances that have given rise to their dispute."

Both parties knew that Saucy Sisters must undergo expensive renovations in order to serve United. Saucy Sisters claims a cost of $600,000. We might ask what the parties would have done had Saucy Sisters asked United whether United could terminate the contract either soon after start up or at any time during the three-year term solely because a competitor offered better terms. I think the answer would have been that United would forego that power. Had United asserted the right to terminate to get better terms, there likely would have been no contract. Saucy Sisters would probably not have spent what for it was a small fortune had United overtly reserved the right to make a better deal during the three-year period.

> Most cases invoking the obligation to perform in good faith can be synthesized using the following principle: a party performs in bad faith by using discretion in performance for reasons outside the justified expectations of the parties arising from their agreement. Distinguishing allowed from disallowed reasons—opportunities forgone from opportunities preserved on entering a contract—will often be easy. But the distinction will be difficult in some cases. Specific disallowed reasons may be inferred from the express contract terms in light of the ordinary course of business and customary practice, in accordance with the usual principles of contract interpretation. It is not hard to infer from a fixed contract price, for example, that the parties have forgone opportunities to take advantage of market price fluctuations.[15]

Thus, in my view, early termination by United motivated by a desire to contract with

---

**12.** The court also dismisses the rule as described by *Seegmiller* as dictum. Op. at 1266 n.31. While it is true that the holding in *Seegmiller* rested on other grounds, the language does reflect the general rule accepted by Illinois courts.

**13.** *See* Steven J. Burton & Eric G. Andersen, *Contractual Good Faith: Formation, Performance, Breach, Enforcement* § 2.3 (1995).

**14.** 679 A.2d 436, 443 (Del.1996) (citations omitted) (alteration in original).

**15.** Burton & Anderson, *supra,* § 2.3.3 at 57.

a competitor on better terms would have contradicted the justified expectations of Saucy Sisters.

In light of the foregoing, I believe that summary judgment in favor of United was therefore correctly denied. Whether particular conduct qualifies as good faith is a question of law for the court.[16] But whether United in fact acted with an impermissible motive was properly a question for the jury.[17] No question has been raised as to whether the jury was correctly instructed. I would therefore affirm the judgment on the question of liability.[18]

---

**16.** 3A *Corbin on Contracts* § 655B, at 116–17 (1999 Supp.).

**17.** *See id.*

**18.** United also raises a question as to whether the damage award is consistent with Illinois law. Given my dissenting position, I have not addressed this question.